FILED

2024 JAN 23 P 12: 38

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | |
| KYLE RAMSTETTER; | Case No. 1:23-cr-27-RDA |
| CHRISTIAN KIRSCHNER, | Case No. 1:23-cr-36-RDA |
| Defendants. | |

**VICTIM IMPACT STATEMENT**
**ON BEHALF OF AMAZON.COM, INC.**

Amazon.com, Inc. ("Amazon" or the "Company") submits this victim impact statement regarding the government's Unopposed Motion to Dismiss in the above-captioned cases. As a victim in these criminal proceedings, Amazon has the statutory right to be heard in connection with this matter. *See* 18 U.S.C. §§ 3771(a)(4), (e); *see also* Fed. R. Crim. P. 60 (discussing crime victims' "Right to Be Heard on Release, a Plea, or Sentencing"). As discussed below, the government's decision to decline to prosecute anyone for these offenses, despite the evidence of criminal conduct, is disappointing and sends the signal that corporate fraud may go unpunished in this District.

As described in the plea agreements here and in filings in related civil litigation, these criminal cases concern a multimillion-dollar kickback scheme orchestrated by two former Amazon employees, Carleton Nelson and Casey Kirschner (defendant Christian Kirschner's brother), to illegally profit from numerous Amazon real estate projects. Nelson and Casey Kirschner exploited their positions as real estate transaction managers to steer real estate projects to corrupt developers, including Brian Watson and his company Northstar, in exchange for millions of dollars in kickbacks. Nelson and Casey Kirschner relied on a co-conspirator attorney, Rod Atherton, to launder the kickbacks through a series of shell entities and conceal the scheme. Defendants Christian Kirschner and Kyle Ramstetter played their part by serving as intermediaries between the scheme's principal players—Watson, Nelson, and Casey Kirschner—and by helping to facilitate the kickback payments. Overall, Nelson and Casey Kirschner orchestrated kickbacks on eleven commercial real estate transactions, which allowed them and their co-conspirators to take home a total of approximately $33 million in illicit profits. The scheme would have continued indefinitely had Amazon not been alerted to it by an insider at Northstar and promptly notified federal authorities.

The evidence of this criminal scheme includes admissions of guilt by multiple members of the conspiracy. In a signed statement to the FBI, Casey Kirschner confessed to participating in a "kickback scheme" in which "Northstar paid kickbacks" to "Carl Nelson and me" on "Amazon development deals in Northern Virginia." *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484 (Feb. 2, 2023) (Dkt. 1227-6). Nelson likewise admitted in a recorded conversation that he and Casey Kirschner took money from Northstar through the Villanova Trust, a shell entity they created with Atherton to launder the illegal kickbacks. *Id.* (Dkt. 1225-5). Defendants Christian Kirschner and Ramstetter, a former Northstar employee, also admitted to participating in the scheme and have each pleaded guilty to conspiracy to commit honest services wire fraud in violation of 18 U.S.C. § 1349. *See* Plea Agreement at 2, *United States v. Kirschner*, No. 1:23-cr-36 (E.D. Va.) (Dkt. 10 Mar. 8, 2023); Plea Agreement at 2, *United States v. Ramstetter*, No. 1:23-cr-27 (E.D. Va. Mar. 8, 2023) (Dkt. 10). The Statements of Facts accompanying their plea agreements provide detailed information about how "B[rian] W[atson], C[arleton] N[elson], C[asey] K[irschner], [and] R[odney] A[therton]"[1] "did knowingly conspire and agree with each other to commit honest services wire fraud, that is: having devised or intending to devise a scheme and artifice to defraud the Victim Company of its right to the honest services of its employees through bribery or kickbacks." Statement of Facts at 1, *United States v. Kirschner*, No. 1:23-cr-36 (E.D. Va. Mar. 8, 2023) (Dkt. 11); Statement of Facts at 1, *United States v. Ramstetter*, No. 1:23-cr-27 (E.D. Va. Mar. 8, 2023) (Dkt. 11). The government affirmed that these statements "are true and correct," and has not questioned the veracity of these facts in yesterday's motion or at any other time of which Amazon is aware. *Id.*

---

[1] The Government's filing provided initials of the uncharged co-conspirators. Amazon, as the victim and former employer of two of the co-conspirators, is aware of the names of these individuals.

2

Other evidence of the criminal scheme includes deposition testimony by Christian Kirschner and Ramstetter in the related civil litigation describing the various roles they and their co-conspirators played in the scheme. *See Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484 (Apr. 21, 2023) (Dkts. 1396-1, 1396-2). In a recording of a conversation between Ramstetter and Watson, Watson explicitly referenced payments to Nelson and Casey Kirschner. *See id.* (Dkt. 1227-7). Bank records also show the flow of funds from Watson, through various shell entities, and ultimately to Nelson, Casey Kirschner, or entities they controlled. *See id.* (Dkt. 1259-1). Other communications, including those sent on encrypted messaging platforms, shine additional light on the scheme. Amazon has shared all of this evidence with the government, and much of it has been filed publicly in the related civil litigation.

What's more, this was not a victimless crime. Amazon—the "Victim Company" referenced in the Statements of Facts for both of the plea agreements—was directly harmed by the bribery scheme, which defrauded the Company and another victim, IPI Partners LLC ("IPI"), out of millions of dollars through inflated fees that were inserted in transactions to fund the kickbacks. The perpetrators of this scheme, moreover, took over $33 million dollars out of these deals for themselves. The crime also deprived Amazon of the honest services of Nelson and Casey Kirschner, the two former employees who used their positions as insiders to enact the scheme. As the victim of this fraudulent scheme, Amazon has an interest in seeing that those responsible for it are held to account for their conduct.

The government, however, has unfortunately decided to give the perpetrators of the scheme a free pass without explaining to the victims or court why it is doing so. That decision is disappointing. The monetary harm suffered by Amazon in connection with the bribery scheme is significant. But, even more importantly, this case raises issues of deterrence that will directly impact the victims and other companies. Companies that operate in this District have good reason

3

to be concerned about the message the government's decision sends to those who might scheme to defraud through bribery and kickbacks: that they may profit from their crimes, and the government may be willing to walk away from the prosecution of perpetrators of commercial bribery after obtaining admissions to these crimes under oath in open court.

The government's decision also contradicts the Department of Justice's recent public statements about the importance of individual accountability as a key priority for the Department. For example, in March 2022, Attorney General Merrick Garland described individual prosecutions as "the best deterrent to corporate crime" and as "essential to Americans' trust in the rule of law." U.S. Dep't of Justice, Office of Public Affairs, Attorney General Merrick B. Garland Delivers Remarks to the ABA Institute on White Collar Crime (Mar. 3, 2022). In March 2023, Deputy Attorney General Lisa Monaco remarked that "the most important priority in corporate enforcement" is "individual accountability." U.S. Dep't of Justice, Office of Public Affairs, Deputy Attorney General Lisa Monaco Delivers Remarks at American Bar Association National Institute on White Collar Crime (Mar. 2, 2023). The government's decision to forgo prosecution here undermines both trust in the rule of law, by undermining assurances that criminal wrongdoers will be prosecuted, and trust in the commitment of the government to vindicate the rights of victims, which in this case have been left with no options but to seek their own remedies.

The government's explanation for departing from these principles is unpersuasive. It simply notes, without further elaboration, that "[p]rosecution of these cases is not in the best interests of justice." Unopposed Motion to Dismiss at 3, *United States v. Kirschner*, No. 1:23-cr-36 (E.D. Va. Jan. 10, 2024) (Dkt. 23); Unopposed Motion to Dismiss at 3, *United States v. Ramstetter*, No. 1:23-cr-27 (E.D. Va. Jan. 10, 2024) (Dkt. 20). The government also notes that the Court has "dismissed Amazon's . . . claims" in a "related civil litigation." *Id.* at 1 n.1. But, as this Court knows best, that is inaccurate. The Court granted summary judgment for the defendants on

4

only *some* of Amazon's claims (which the Court then allowed Amazon to appeal pretrial), while expressly allowing others to proceed to trial. *See* Memorandum Opinion and Order, *Amazon.com, Inc. v. WDC Holdings LLC*, No. 1:20-cv-484 (Apr. 6, 2023) (Dkt. 1376). Indeed, as to the claims that the Court green-lit for trial, the Court found "that a reasonable juror could conclude that the Watson Defendants interfered with Nelson's and Casey Kirschner's employment relationships *by bribing them and thereby depriving Amazon of its employees' honest services.*" *Id.* at 24 (emphasis added). In other words, the Court confirmed the viability of the very theory—honest services fraud—that the government was pursuing here in its plea agreements and criminal investigation. And, in any event, Amazon is not aware of any DOJ practice of basing charging decisions on rulings in related civil matters, especially rulings that were peculiar to the elements of *civil* claims.

Although Amazon understands that prosecutors have broad discretion in determining whether to investigate and prosecute federal crimes, Amazon is disappointed by the government's decision to deprioritize this matter, which sends the wrong message to those who defraud their employers by accepting bribes or kickbacks. Many victims, such as individuals or smaller companies, would have no further recourse in a situation like this. But Amazon has the ability—and, indeed, the responsibility—to take further action to protect its rights. First, Amazon believes that it has the responsibility, as it has done in this Victim Statement, to publicly call out the precedent that this sets for companies operating in this District. Secondly, given the government's decision to close its investigation and vacate the existing pleas, Amazon must and will continue to pursue the full legal remedies available to it in the civil action before this Court. This Court has recognized that there are triable issues of fact as to whether Amazon was deprived of the honest services of its employees—the theory that forms the basis of Amazon's civil tortious-interference claim. Amazon intends to vindicate its rights by bringing this claim, and others, to trial.

We thank the Court for the opportunity to convey Amazon's perspective as both a victim of this criminal conspiracy and as a company with a significant ongoing presence in this District, and are available to provide any additional information the Court should need. Should the Court hold a hearing to further examine the government's reasons for vacating these plea agreements, Amazon would like the opportunity to have notice of, and be heard at, that hearing.

Dated: January 23, 2024

Respectfully submitted,

/s/ Michael R. Dziuban
Patrick F. Stokes
George J. Hazel
Michael R. Dziuban (Va. State Bar No. 89136)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
pstokes@gibsondunn.com
ghazel@gibsondunn.com
mdziuban@gibsondunn.com

*Counsel for Amazon.com, Inc.*